ANDREW E. DIAZ,

        Plaintiff,

        v.                                  Case No. 26-cv-0843-bhl

GINGER B. RANDOLPH,
T. BRADY, and
K. VASQUEZ,

        Defendants.

## SCREENING ORDER

Plaintiff Andrew Diaz, who is currently serving a state prison sentence at Racine Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Diaz's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Diaz has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Diaz has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an initial partial filing fee of $14.60. Diaz's motion for leave to proceed without prepaying the filing fee will be granted.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a

complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

Diaz explains that after arriving at a new institution, he asked Nurse Practitioner Ginger Randolph to recommend a prescription for Tramadol, a narcotic that had previously worked to relieve pain he was suffering from a 2017 back injury. Randolph informed Diaz that there was another non-narcotic medication she wanted to try first. Diaz asserts that within three to four days he began to feel nauseous and black out, as he had with other similar medications. Diaz asserts that he informed Randolph, but instead of cancelling the medication as other providers had, she merely lowered the dosage. Diaz asserts that about a week later, the side effects returned, and he vomited twice and blacked out twice. Diaz asserts that he wrote to the health services unit, but he received no response. He states that, on June 17, 2025, he blacked out and fell into a trimmed tree.

2

Diaz asserts that he suffered a major head injury that required five staples to reattach his scalp. At Diaz's request, Randolph submitted the request for Tramadol; it was approved immediately.[1]

Diaz asserts that, in addition to his scalp laceration, he suffered vision loss and headaches. He states that he informed Randolph of these symptoms the day of the injury. According to Diaz, he decided to wait about a month to see if his vision and headaches would improve, but they did not, so he wrote to Randolph. She did not respond. Diaz states that he wrote to her again on August 20, 2025, at which time she put in a referral for him to see the institution optometrist. Diaz also wrote to Health Services Manager K. Vazquez and Assistant Manager T. Brady. He states that they confirmed he had been referred to the optometrist. Another month passed without an evaluation, so Diaz wrote to Randolph again, but he received no response. Yet another month passed without an evaluation—at this point he had been experiencing vision loss and headaches for about 120 days. Diaz asserts that he wrote to Randolph, Vazquez, and Brady again, but they did not respond. Finally, Diaz was seen by the optometrist on December 15, 2025, about 150 days after he was injured.

According to Diaz, the optometrist was so alarmed that he put in an emergency referral to an offsite specialist. Four days later, Diaz was examined offsite. He states that he underwent about four hours of testing, after which he was informed that because of the delay, his eye healed improperly. He states that, because of the ongoing headaches, the specialist instructed that he be taken to the emergency room to rule out a brain bleed. Diaz asserts that he continues to suffer from painful headaches and vision loss. He states that Randolph is no longer his provider. He explains that he has been seen by a neurologist and has been told further testing is required to determine whether the damage is permanent.

### THE COURT'S ANALYSIS

"[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). To state a claim under the Eighth Amendment, a plaintiff must allege that prison officials

---

[1] The Court understands Diaz to include these allegations only for context, as these same allegations form the basis of a deliberate indifference claim that Diaz is proceeding on against Randolph in *Diaz v. Randolph*, Case No. 25-cv-1908-bhl.

intentionally disregarded a known, objectively serious medical condition that posed an excessive risk to the plaintiff's health. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citations omitted). "A delay in treatment may show deliberate indifference if it exacerbated [the plaintiff's] injury or unnecessarily prolonged his pain." *Id*. at 777-78. With the foregoing standard in mind, the Court will allow Diaz to proceed on an Eighth Amendment medical care claim against Randolph, Brady, and Vasquez based on allegations that, despite his persistent complaints about headaches and his inability to see, they did not provide him with pain medication or prioritize an evaluation, which, according to Diaz, led to his eye healing improperly.

**IT IS THEREFORE ORDERED** that Diaz's motion for leave to proceed *in forma pauperis* (Dkt. No. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Diaz's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Ginger B. Randolph, T. Brady, and K. Vasquez.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Ginger B. Randolph, T. Brady, and K. Vasquez shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Diaz is located.

**IT IS FURTHER ORDERED** that the agency having custody of Diaz shall collect from his institution trust account the $335.40 balance of the filing fee by collecting monthly payments from Diaz's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Diaz is transferred to another institution, the transferring institution shall forward a copy of this Order along with Diaz's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

4

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Diaz is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 18th day of June, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

5